# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# PADUCAH DIVISION
# CASE NO. 5:09-CV-99

**KELLY SNOW**                                                                              **PLAINTIFF**

**v.**

**STEVE HILAND, M.D., ET AL.**                                                              **DEFENDANTS**

## MEMORANDUM OPINION

This matter is before the Court upon the Motion for Summary Judgment of Defendants Steve Hiland, M.D., and Chanin Hiland, ARNP (Docket #21). Plaintiff has responded (Docket #25). Defendants have replied (Docket #26). This matter is now ripe for adjudication. For the following reasons, Defendants' motion is GRANTED.

## BACKGROUND

Plaintiff Kelly Snow is a convicted inmate currently incarcerated at the Kentucky State Reformatory ("KSR"). Plaintiff was incarcerated at the Kentucky State Penitentiary ("KSP") from February 21, 2008, to September 24, 2008. Plaintiff filed a *pro se* complaint under 42 U.S.C. § 1983 on June 4, 2009. On December 2, 2009, the Court conducted an initial review pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997). The Court allowed Plaintiff's Eighth Amendment claim against Defendants Dr. Steve Hiland, Nurse Practitioner Chanin Hiland, and Nurse Sarah Gish to proceed.

Plaintiff states that he injured his back on July 8, 2008, while lifting weights. The parties disagree over whether Plaintiff reported his injury to medical staff on this date. On July 16, 2008, Plaintiff complained to LPN Sarah Gish of abdominal pain towards his back and was instructed to sign up for sick call in the morning. On July 17, 2008, Plaintiff was found on the floor of the kitchen complaining of abdominal pain. He was admitted to the infirmary for

observation. The following day, Plaintiff was observed having rested well with no complaints of pain and ambulating in the room with no difficulty. Plaintiff asked if he was going to receive pain medication for his back and was told that none had been ordered. He requested to go back to his cell, but Chanin Hiland ordered that he stay in the infirmary until July 21, 2008, for observation. On July 19, 2008, Plaintiff complained of "slight discomfort to lower back." DN 21-2, p. 13. He soaked in a tub for approximately twenty minutes and stated he felt better afterwards. He was observed ambulating without difficulty, and was given regular strength Tylenol for his discomfort. On July 21, 2008, Plaintiff reported to Dr. Steve Hiland that his back pain was improved and he requested to be released to the yard. Dr. Hiland noted that Plaintiff's blood pressure was elevated and released him with orders for his blood pressure to be checked daily for a week.

On July 24, 2008, Plaintiff filed an Inmate Grievance Form regarding the medical treatment of his back. In response, Dr. Hiland noted:

> This inmate has been to medical multiple times to see if he could get a pain shot. These incidents are not documented because they were not clinic visits, only interactions at the infirmary window. He has had no known injury. There are no special or extra mats given at KSP. I do not believe an x-ray would benefit him. I have given him naproxen as conservative therapy. He is not allowed anything stronger on the yard.

DN 1-5, p. 5. Dr. Hiland diagnosed Plaintff as drug seeking and malingering. (Plaintiff appealed the grievance committee's decision on September 3, 2008.)

On August 21, 2008, Plaintiff was prescribed Naproxen. The following day Plaintiff spoke to Chanin Hiland about his back after sick call sign up. Chanin Hiland "told him he was not to come down to speak to [her] at some special time when no one else was around to ask about getting x-rays or anything else for his back. He has already been diagnosed with

2

malingering and drug seeking with a negative exam." DN 21-2, p. 16. On August 27, 2008, Plaintiff complained to RN Terri Jones that he was experiencing back pain and numbness in his legs, as well as loss of control of bowel movements and difficulty walking. Plaintiff's pain was treated with a heating pad and he was ordered on strict bed rest. On August 28, 2008, Plaintiff did not show up for his sick call appointment. According to Chanin Hiland, Plaintiff stated he could not get up that early because of his back pain, although he never alerted any medical staff.

On September 1, 2008, Plaintiff approached nursing staff on the yard and complained of pain in his lower back radiating down both legs. His gait was unsteady and he complained of numbness and lack of motor skills in his legs and feet. He met with Dr. Steve Hiland the following morning, reporting that he could barely walk and cannot put his shoes on. Dr. Hiland's exam of Plaintiff was negative, and Dr. Hiland believed that Plaintiff was malingering. He did not recommend additional treatment.

On September 18, 2008, Plaintiff was unable to stand unassisted and claimed he could not walk on his right leg. He complained of pain and numbness in his legs along with sharp back pain. An exam and x-ray of his back were ordered. Plaintiff was admitted to the infirmary by Chanin Hiland, where he received hot tub soaks and Naproxen. The following day Plaintiff reported that the pain had not improved and he was ordered to remain on bedrest. He later reported to LPN Sarah Gish that he was unable to walk or shower and his pain was at a level 6. The following day Plaintiff reported muscle spasms that had kept him awake all night and he was unable to ambulate. He was assisted in showering and needed a wheelchair to get from the bed to the shower. On September 21, 2008, Plaintiff reported continued pain and requested his medication. His back pain was treated with heating pads, a tub soak, and Naproxen. He

continued to complain of muscle spasms in his back and legs on the 21st, 22nd, and 23rd.

Dr. Steve Hiland examined Plaintiff on September 23, 2008. He noted a normal or negative exam. Again, Dr. Hiland believed Plaintiff was malingering and ordered him housed in the infirmary "until he is willing/able to ambulate in a normal fashion." DN 21-2, p. 37.

Plaintiff was transferred to Northpoint Training Center ("NTC") on September 24, 2008, for reasons unrelated to his medical condition. There he received an MRI and neurological consult and was diagnosed with a thoracic spine herniation with epidural abscess. Plaintiff underwent three surgeries on his back with the first occurring on September 26, 2008, and the last in June of 2009.

Plaintiff alleges that the treatment, or lack of treatment, he received at KSP was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. Defendants filed their motion for summary judgment on November 24, 2010. The Court now considers this motion.

**STANDARD**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the

4

case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

## DISCUSSION

Plaintiff alleges that Defendants may be held liable under 42 U.S.C. § 1983 for deliberate indifference to a serious medical need in violation of the Eighth Amendment of the United States Constitution. "Under 42 U.S.C. § 1983, a plaintiff must allege that he was deprived of a right secured by the Federal Constitution or laws of the United States by a person acting under color of state law." *Wolotsky v. Huhn*, 960 F.2d 1331, 1334 (6th Cir. 1992). There is no dispute that all Defendants were acting under color of state law. Plaintiff must demonstrate a genuine issue of material fact that Defendants deprived Plaintiff of his Eighth Amendment rights.

To establish a claim under the Eighth Amendment, the plaintiff must demonstrate "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Deliberate indifference is judged objectively and subjectively. *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001). Under the objective prong, an inmate must demonstrate a "sufficiently serious medical need." *Mingus v. Butler*, 591 F.3d 474, 480 (6th Cir. 2010) (internal citations omitted). "A serious medical need is 'one that has been diagnosed by a physician as

mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (quoting *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 897 (6th Cir. 2004)). To demonstrate the subjective prong, the inmate must demonstrate that the official knew and disregarded an excessive risk to the inmate's health and safety. *Mingus*, 591 F.3d at 480. An accident, "inadvertent failure to provide adequate medical care," or an act of negligence does not rise to the level of an Eighth Amendment violation. *Estelle*, 429 U.S. at 105.

The Court finds that Plaintiff has satisfied the objective component by showing a genuine issue of material fact exists regarding whether he suffered from a sufficiently serious medical need. "It is well established that pain can be a 'sufficiently serious' medical need for purposes of an indifference claim." *Scott v. Antonini*, No. 07-10459, 2011 WL 533869, at *2 (E.D. Mich. Feb. 15, 2011) (citations omitted). Plaintiff's numerous complaints of chronic pain and numbness are documented in his medical records. These records also indicate that, at times, Plaintiff had trouble standing and walked with an unsteady gait. The MRI and back operations Plaintiff received after leaving KSP add further support that Plaintiff suffered a serious medical need.

Plaintiff has failed to create a genuine issue of fact, however, that Defendants' actions satisfy the subjective prong. Although Dr. Hiland believed Plaintiff was malingering and drug seeking, at no time did medical staff ignore Plaintiff's complaints. After Plaintiff's complaints of back pain were first brought to the medical staff's attention, he was told to sign up for sick call the next morning. The following day he collapsed onto the floor in the kitchen and was admitted to the infirmary for observation. He was ordered to soak in a tub and given Tylenol for

his discomfort. He then told Dr. Hiland that his back pain had improved and he wished to be released from the infirmary. Plaintiff did not return to the medical staff until approximately one month later. Again, he was told to sign up for sick call. He received a heating pad for his pain and was placed on bedrest. Plaintiff failed to appear for his August 28, 2008, sick call appointment, and he did not alert medical staff that he was unable to make it due to his back pain. Dr. Hiland examined Plaintiff again on September 2, 2008, and the exam was normal. Therefore, he did not feel additional treatment was necessary.

When Plaintiff complained of pain on September 18, 2008, he was again examined and an x-ray of his back was ordered. He was admitted to the infirmary, soaked in a tub for pain relief, and was put on Naproxen. He was provided a wheelchair to get around and nurses assisted him in showering. Finally, after seeing Dr. Hiland again on September 23, 2008, Plaintiff was ordered to remain in the infirmary and he continued to receive pain medication. After this date, Plaintiff was transferred to NTC.

The Sixth Circuit has cautioned that "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976). In addition, difference of opinion between the patient and healthcare professionals does not give rise to a constitutional claim. *See Byrd v. Wilson*, 701 F.2d 592 (6th Cir. 1983); *Tolbert v. Eyman*, 434 F.2d 625 (9th Cir. 1970); *Alexander v. Federal Bureau of Prisons*, 227 F. Supp. 2d 657, 666 (E.D. Ky. 2002). Plaintiff's allegations center around the fact that he was never given an x-ray or MRI prior to September 17, 2008. This argument was rejected by the Supreme Court in *Estelle*, which held

7

that "[a] medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment." 429 U.S. at 107.

Plaintiff also argues that he was ignored and refused medical treatment because Defendants assumed he was malingering. As noted above, Plaintiff was not denied medical treatment. He did not, however, receive the treatment he desired or believed necessary. This is not enough to establish a constitutional violation. In addition, there is enough evidence in the record to find that Dr. Hiland's belief that Plaintiff was malingering was subjectively reasonable.

Finally, Plaintiff argues that the delay in treatment had a detrimental effect. *See Napier v. Madison Cty.*, 238 F. 3d 739, 742 (6th Cir. 2001) (adopting the rule that "'[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed.'" (citation omitted)). ARNP Chanin Hiland's affidavit states "it is my medical opinion that postponement or delay in the employment of more aggressive treatment or testing methods for the symptoms of back pain and numbness in the legs complained about by Inmate Snow at KSP has not resulted in any harm to Inmate Snow's health or physical injury to him." DN 21-2, p. 5. Although Plaintiff presents evidence that his condition worsened as time passed, his case is really one involving medical judgment, not delay. Defendants made choices about Plaintiff's care and those orders were then implemented by medical staff. This is not a case where Defendants simply failed to treat Plaintiff for a period of time. As noted earlier, the Court is "reluctant to second guess medical judgments . . . ." *Westlake*, 537 F.2d at 860 n. 5.

The Court finds that Plaintiff has failed to create a genuine issue of material fact that Defendants knew and disregarded an excessive risk to Plaintiff's health and safety. Because

8

Plaintiff has failed to satisfy the second prong of the deliberate indifference analysis, Plaintiff's Eighth Amendment claim must fail.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is GRANTED.

An appropriate order shall issue.